## Pennsylvania Turnpike Commission v. Baldwin Bros. et al.

*John M. Duff* and *Frank S. Delp*, for plaintiffs.
*John M. Reed*, for defendant.

ELLENBOGEN, J., April 7, 1942.—This case comes before the court en banc on a rule for judgment in favor of plaintiff for want of a sufficient affidavit of defense.

The Universal Concrete Pipe Company, a corporation, use-plaintiff, alleges in its statement of claim that

it sold and delivered to Louis Critelli, doing business as the Sharpsburg Contracting Company, upon a written purchase order, certain concrete pipes, at the total sales price of $1,386; that said Louis Critelli was a subcontractor of the Baldwin Brothers Paving Company, a corporation, one of defendants, which had a written contract with the Pennsylvania Turnpike Commission for the construction of a section of the Pennsylvania Turnpike; that said Louis Critelli incorporated these pipes into the portion of the Pennsylvania Turnpike which had been contracted for and was being constructed by Baldwin Brothers Paving Company; that the United States Fidelity & Guaranty Company, a corporation, the other defendant, was surety on the bond of the Baldwin Brothers Paving Company, given to the Pennsylvania Turnpike Commission to secure the payment of materials furnished by subcontractors, and that plaintiff has not been paid.

The affidavit of defense alleges that defendants have no knowledge and have been unable to ascertain whether these facts are true; that the pipes were not furnished by Louis Critelli, doing business as the Sharpsburg Contracting Company, but were furnished by the Sharpsburg Contracting Company, a corporation, of which Louis Critelli was an officer; and that, contrary to the provisions of the Act of June 22, 1931, P. L. 881, plaintiff did not give notice to defendants of its claim until more than ninety days had elapsed from the date when the last material was furnished.

The principal question of law raised by these pleadings is whether the Act of June 22, 1931, P. L. 881, which requires notice within 90 days, applies. If it does, plaintiff is barred from recovery. If, however, the Act of 1931 does not apply to contracts entered into with the Pennsylvania Turnpike Commission, the notice given in this case is sufficient because the bond itself requires only that suit be instituted not later than one year

after the complete performance of the contract, which was done in this case.

The Act of 1931 provides that "Whenever the Commonwealth of Pennsylvania, acting by or through any department or agency thereof, or any municipality therein, shall require any person . . . entering into a contract with such department, agency, or municipality for any public work or improvement, to execute and deliver to such department, agency, or municipality an additional bond, as required by law, conditioned for the payment of material furnished and labor supplied or performed in the prosecution of any such public work or improvement . . ." [1], the subcontractor shall not have a right of action upon the additional bond, unless he gives written notice to the contractor or his surety not later than 90 days from the date when the last of the material or labor was furnished.

Section 4 of the Act of 1931 expressly states that a subcontractor "shall not have a right of action" unless

---

[1] Act of June 22, 1931, P. L. 881, sec. 2: "Whenever the Commonwealth of Pennsylvania, acting by or through any department or agency thereof, or any municipality therein, shall require any person, co-partnership, association, or corporation, entering into a contract with such department, agency, or municipality for any public work or improvement, to execute and deliver to such department, agency, or municipality an additional bond, as required by law, conditioned for the payment of material furnished and labor supplied or performed in the prosecution of any such public work or improvement, then, in such event, every person, co-partnership, association, or corporation who, whether as sub-contractor or otherwise, has furnished material or supplied or performed labor in the prosecution of any such public work or improvement, whether or not the said material or labor enter into and become component parts of the work or improvement contemplated, and who has not been paid therefor, shall have the right to sue in assumpsit on said additional bond, in the name of the Commonwealth where the said contract has been entered into with any department or agency thereof, and in the name of the municipality where the said contract has been entered into with such municipality, for his, their, or its use, and to prosecute the same to final judgment, for such sum or sums as may be justly due him, them, or it and to have execution thereon: Provided, however, That such department, agency, or municipality shall not be liable for the payment of any costs or expenses of any suit."

the provision as to the 90 days' notice is complied with.[2] This section creates a right of action in favor of subcontractors on condition that they give notice to the contractor within 90 days from the time that the last material was furnished or the last labor performed. This condition is mandatory and must be complied with before a right of action arises: Commonwealth, to use, v. Piel Construction Co. et al., 284 Pa. 64; Borough of Castle Shannon v. Collinger et al., 110 Pa. Superior Ct. 144; Chester City School District, to use, v. Richardson, 24 Del. Co. 380.

The bond provided for by the Act of 1931 is an "additional bond", given to secure subcontractors. Under the terms of the statute, suit on the bond may be entered either (1) in the name of the Commonwealth "where the said contract has been entered into with any department or agency thereof," or (2) in the name of the municipality "where the said contract has been entered into with such municipality." The requirement of the statute that suit be entered in the name of the Commonwealth or in the name of the municipality must be interpreted to require that the bond itself be made payable either to the Commonwealth or to the municipality.

---

[2] Sec. 4: "Any such person, co-partnership, association, or corporation, who has no contractual relationship, express or implied, with the contractor furnishing the said additional bond, shall not have a right of action upon said additional bond, unless the said person, co-partnership, association, or corporation shall have given written notice to said contractor, or to his, their, or its surety, not later than ninety (90) days from the date on which the said person, co-partnership, association, or corporation furnished, supplied, or performed the last of the material or labor for which the said claim is made, stating, with substantial accuracy, the amount claimed and the name of the party with whom the said person, co-partnership, association, or corporation contracted. Said notice shall be served either in the manner now or hereafter provided by law for the service of a summons, save that service need not be made by the sheriff, or by mailing said notice by registered mail, postage prepaid, in an envelope addressed to the contractor at the contractor's last known place of business or residence, or to the surety at any of its offices or places of business."

We need not consider the provisions relating to municipalities, because they are not involved here. The bond upon which the suit before us is based was not made payable to the Commonwealth nor was it delivered to the Commonwealth. The bond was given and delivered to the Pennsylvania Turnpike Commission and the suit in this case was not and could not be entered in the name of the Commonwealth, but was entered in the name of the Pennsylvania Turnpike Commission, the obligee named in the bond. This difference between the terms of the bond in suit and the provisions of the Act of 1931 shows that the parties were not proceeding under the Act of 1931 when they executed the bond which is the basis of this suit. It is a fundamental principle of law that a written contract must be so interpreted as to carry out the intent, meaning, and purpose in contemplation of the parties at the time of the execution of the written agreement. How can it be argued successfully that the enforcement of this bond is governed by the term of the Act of 1931 when the parties did not proceed under the act in furnishing the bond?

We believe that the Act of 1931 applies only to bonds payable and delivered to the Commonwealth or to a municipality and only where suit is entered in the name of the Commonwealth or of the municipality. The bond in suit was not payable nor was it delivered to the Commonwealth and so the Act of 1931 does not apply. There are additional reasons why this bond is not governed by the provisions of the Act of 1931.

The Act of 1931 applies "Whenever the Commonwealth of Pennsylvania, acting by or through any department or agency thereof, or any municipality therein, shall require any person . . . to execute and deliver to such department, agency, or municipality an additional bond. . . ." The question arises whether or not the Pennsylvania Turnpike Commission is a "department or agency" of the Commonwealth of Pennsylvania, as these terms are used in the Act of 1931. Clearly, the

Pennsylvania Turnpike Commission is not a "department" of the Commonwealth. Is it an "agency" of the State? Is the relationship between the Commonwealth and the Turnpike Commission that of principal and agent? A principal is the person for whom the agent acts, the person who instructs and directs the agent. An agent is one who acts in the place of and for the account of his principal, but not for his own account. Contracts entered into by an agent are entered and enforced in the name of the principal. These characteristics of the relationship of principal and agent do not apply to the relationship existing between the Commonwealth and the Turnpike Commission.

The Pennsylvania Turnpike Commission was created by the Act of May 21, 1937, P. L. 774, to build and maintain what has become known as the "turnpike" leading from Irwin to Middlesex. It is a separate and distinct legal entity, governed by a commission consisting of five members, with the right to make contracts, and sue and be sued in its own name: sec. 4. The commission has a right to issue "revenue bonds" which are an obligation solely of the Pennsylvania Turnpike Commission and are not to "be deemed to be a debt of the Commonwealth or a pledge of the faith and credit of the Commonwealth": sec. 2. It charges and collects tolls for the use of the turnpike which are deposited in a special fund under the jurisdiction of the commission and are not deposited in the name of the Commonwealth, nor are they mingled with Commonwealth funds. Funds expended by the Department of Highways on behalf of the Pennsylvania Turnpike Commission must be repaid by the commission: sec. 12.

It is clear from what we have already said that the Pennsylvania Turnpike Commission is a corporation, separate and apart from the Commonwealth of Pennsylvania. Of course, as every domestic corporation, it derives its powers from the Commonwealth and is subject to the supervision of the Commonwealth of Penn-

sylvania, but its relationship to the Commonwealth is not that of an agent. The Commonwealth cannot issue orders to the Turnpike Commission (except in regard to matters specifically prescribed in the act creating the commission),[3] and the commission cannot obligate the Commonwealth. The chief element of the relationship of agency is that the principal is financially responsible for the acts of his agent whenever the agent acts within the scope of his authority. Since the Commonwealth is not and under the statute cannot be made financially liable for the obligations and actions of the Turnpike Commission, the relationship of principal and agent does not exist between them.

The Pennsylvania Turnpike Commission is an "instrumentality of the Commonwealth", charged with the "construction, operation, and maintenance of the turnpike" which "shall be deemed and held to be an essential governmental function of the Commonwealth"; it was created for the benefit of the people of the Commonwealth and for the improvement of their commerce and prosperity: sec. 11, Act of May 21, 1937. But the term "instrumentality" as used in that act is not synonymous with the term "agency" as used in the Act of 1931. The Turnpike Commission was created as an independent commission through which the Commonwealth exercises certain governmental functions, but not as a department or agency of the Commonwealth.

Under its terms, the Act of 1931 applies only to bonds which are required by the Commonwealth and are given to the Commonwealth. The bond in suit was required by and given to the Turnpike Commission and not to the Commonwealth.

It is worthy of note that many suits have been filed by subcontractors on bonds such as the one before us and

---

[3] Under the terms of the statute, all contracts relating to the construction of the turnpike and connecting tunnels must be approved by the Department of Highways: sec. 4.

that to our knowledge this is the first time the defense was raised that such suit cannot be maintained unless the terms of the Act of 1931 as to 90 days' notice are complied with.

We might add that the Pennsylvania Turnpike Commission did not come into being until six years after the passage of the Act of 1931 and that it could not possibly have been in contemplation of the legislature at the time of the passage of that act.

We hold that the bond in suit is governed by the terms contained therein and not by the terms of the Act of 1931.

The only other question involved is whether the affidavit of defense sufficiently denies the delivery of the pipes, their incorporation into the turnpike, and the nonpayment of the purchase price. As to these and all other relevant averments of the statement of claim, defendants merely allege in their affidavit of defense that they "have no knowledge, and after reasonable investigation, are unable to ascertain, whether the facts alleged in the statement of claim are correct"; they also aver that these facts are under the exclusive control of plaintiff and demand proof at the trial of the case. It is obviously not correct to say that the facts pleaded in the statement of claim are under the exclusive control of plaintiff or that they cannot be ascertained upon investigation. Defendants could have ascertained them simply by inquiring of the contractor, the Sharpsburg Contracting Company. This they failed to do. The mere statement that defendants have no knowledge of the facts alleged and that after a reasonable investigation they are unable to acquire such knowledge is not sufficient, where that is obviously incorrect: Bank of America National Trust & Savings Assn. v. Sunseri et al., 311 Pa. 114; Pennsylvania Turnpike Commission, to use, v. Girard Construction Co., Inc., et al., 38 D. & C. 1.

The averment in the affidavit of defense that pipes were delivered by the Sharpsburg Contracting Company, a corporation, and not by Louis Critelli, doing business as Sharpsburg Contracting Company, is immaterial.

The affidavit of defense does not sufficiently deny the claim of plaintiff and therefore judgment will be entered in favor of plaintiff.

### Order

And, now, to wit, April 7, 1942, after argument and upon consideration, the rule to show cause why judgment should not be entered in favor of the use-plaintiff and against defendants is hereby made absolute, and it is ordered that judgment be entered in favor of plaintiff and against defendants, Baldwin Brothers Paving Company, a corporation, and United States Fidelity & Guaranty Company, a corporation, in the sum of $1,386 with legal interest thereon at the rate of six percent per annum from May 30, 1940.